STATE EX REL. JOE M. MOSLOSKI v. COUNTY OF MARTIN
AND OTHERS.

80 N. W. (2d) 637.

January 18, 1957—No. 36,956.

*Seifert, Johnson & Hand,* for appellant.
*Dougherty & Flynn* and *Guy E. McCune,* for respondent Maday.

NELSON, JUDGE.

Relator appeals from an order of trial court discharging a writ of certiorari.

Relator is the owner of the NE 1/4 sec. 26, T. 101, R. 30, Martin County, Minnesota, and additional respondent, Maday, is the owner of the W 1/2 NW 1/4 sec. 25 of said township. There is a north and south road between and separating the two tracts of land.

A petition was filed with the county board of Martin County on August 23, 1954, for the improvement of Judicial Ditch No. 38. This ditch had been constructed in 1914, but apparently it had been interfered with and covered up by the construction of the road lying

between relator's farm and the Maday farm. An engineer was duly appointed by the board, and on December 14, 1954, he filed a preliminary report to the effect that the improvement petitioned for was feasible, practical, and necessary. By his map, presented to the board at the time, he indicated that the open ditch portion of the improvement was to be constructed along the road on the land of Maday. The preliminary hearing came on before the county board on January 14, 1955, at which time Maday appeared and objected to having the open ditch on his land. Maday was not satisfied with the improvement plan, and he felt he would not receive any benefits therefrom. It was argued that the natural flow of the water was on the west side of the road, or on relator's side, and that it would be more beneficial to run the ditch on the west side of the road. Because there was a question as to whether Judicial Ditch No. 38 used Judicial Ditch No. 20 as an outlet originally, or whether Judicial Ditch No. 38 had its outlet in a natural waterway, on petitioners' request, the hearing was continued.

The engineer submitted a revised plan and map at the adjourned preliminary hearing placing the open ditch construction on the other side of the road on relator's land. It appears from the record that placing the ditch on relator's land will increase the cost of constructing the open ditch portion of the improvement in the amount of $1,774 over what it will cost if constructed on Maday's land. It was the opinion of the engineer, expressed at the adjourned hearing, that the new plan would not damage relator as much as the original would damage Maday due to the fact that relator had a 160-acre farm and Maday only an 80-acre farm. The engineer reported that the ditch would be feasible on either side of the road. In defense of the additional cost of the culvert, the engineer pointed out that the viewers might allow Maday more damages which would offset the cost of the culvert in question. After discussion by the county attorney, the engineer recommended that the ditch be placed on the west side of the road on relator's land.

After considerable discussion at the adjourned hearing, the board ordered the engineer to make a detailed plan and survey of the pro-

posed improvement according to his revised plan. Thereupon relator petitioned the trial court for a writ of certiorari, which was granted and further proceedings by the county board were stayed. Respondent Maday moved the court for its order discharging the writ of certiorari on the grounds that no order had been issued following the preliminary hearing which constituted a final order affecting relator's rights. It is from an order granting this motion that relator appeals.

Of course, if there be no provision for statutory appeal from a final order, then certiorari is the proper remedy. County of Cottonwood v. Eichner, 181 Minn. 481, 233 N. W. 294.

Our public drainage act, M. S. A. 106.631, subd. 4, provides that any party aggrieved by an order may appeal to the district court of the county where the proceedings are pending from any order made by the county board dismissing the petition for any drainage system or establishing or refusing to establish any drainage system. Under the provisions of said subd. 4 relator can appeal only from an order of the county board where that order dismisses the petition for any drainage system or establishes or refuses to establish any drainage system.

Section 106.631, subd. 5, provides how an appeal may be taken to the supreme court by any party aggrieved by a final order or judgment rendered on appeal to the district court, or by the order made in any judicial ditch proceeding dismissing the petition therefor or establishing or refusing to establish any judicial ditch.

Section 106.631, subd. 6, which bears the heading "Appeal; repair, improvement or improvement of outlet," provides:

"In any proceeding before the board or court for the repair pursuant to petition, or for the improvement of any drainage system, or for public laterals thereto, or for the improvement of an outlet under section 106.511 or for the abandonment of any ditch, the same right of appeal to the district or supreme court shall be had as from

a similar order made in a proceeding to establish a drainage system as herein provided; and on like grounds and with similar procedure."[1]

If the county board's order does not have the effect of a final order, certiorari is the only remedy to which the relator could turn. That remedy, if it lies, is in the nature of an appeal and the same factors will determine the right to each. In re Acquisition of Flying Cloud Airport, 226 Minn. 272, 32 N. W. (2d) 560; 3 Dunnell, Dig. (3 ed.) § 1391. It is the rule, however, that certiorari will not ordinarily lie unless there is a final determination of rights. A writ of certiorari will not be issued to prevent anticipated wrongs. 3 Dunnell, Dig. (3 ed.) §§ 1391, 1396.

The issue in this case is whether the order of the county board here involved made at the close of the preliminary hearing pursuant to M. S. A. 106.101, subd. 5, constituted a final determination of relator's rights. Our public drainage act, § 106.101, subd. 5, provides for findings and order following the preliminary hearing and reads as follows:

"If the board or court shall be satisfied that the proposed improvement as outlined in the petition or as modified and recommended by the engineer is feasible, that there is necessity therefor, that it will be of public benefit and promote the public health, and that the outlet is adequate, the board or court shall so find and by such order shall designate the changes that shall be made in the proposed improvement from that outlined in the petition. These changes may be described in general terms and shall be sufficiently described by filing with the order a map outlining the proposed improvement thereon. Thereafter the petition shall be treated as modified accordingly."

Section 106.101, subd. 6, provides for the "Effect of findings" to be entered at the close of the preliminary hearing and reads as follows:

"The findings hereinbefore required shall be construed as conclusive only as to the sufficiency of the petition, the nature and extent

[1]The Commission note which follows § 106.631 in 9 M. S. A. 1956 Cumulative Annual Pocket Part, p. 92, provides: "Section 63 combines the provisions of Sections 106.89, 106.90, 107.17, and 108.25. It is specifically provided that all orders of the district court shall be reviewable by appeal."

of the proposed plan and the need of a permanent survey, and only as to the persons or parties shown by the engineer's preliminary report as likely to be affected by the improvement. All questions relative to the practicability and necessity of the proposed drain or improvement shall be subject to further investigation and consideration at the final hearing."[2]

It seems quite clear that the issue in this case is whether the county board's order at the close of the preliminary hearings was a final determination of relator's rights. More particularly, the legal issues involved may be stated to be, (1) is the order of the county board made at the close of the preliminary hearings in this particular case final, and (2) is the order of the county board made at the close of the preliminary hearings as to the side of the road on which the ditch will run, conclusive under § 106.101, subds. 5 and 6?

Respondent Maday takes the position that the county board can, under the provisions of § 106.101, change the course of this ditch at the final hearing and that the right on the part of the county board to change the course of the ditch and decide upon how it shall be finally placed is reserved to it under that portion of § 106.101, subd. 6, which provides that "All questions relative to the practicability and necessity of the proposed drain or improvement shall be subject to further investigation and consideration at the final hearing." We think Maday has taken the correct position and we so hold. In doing so, we follow the statute which clearly states that the findings required at the close of the preliminary hearing shall be construed as conclusive only as to the sufficiency of the petition, the nature and extent of the proposed plan, and the need of a permanent survey, and only as to the persons or parties shown by the

---

[2] A Commission note follows § 106.101 in 9 M. S. A. 1956 Cumulative Annual Pocket Part, p. 29, which states: "This section largely follows Section 106.07. It contains new matter, particularly as to a finding on the sufficiency of the petition and the re-reference of the petition with the privilege of obtaining additional signers if the petition be found insufficient. It also contains a requirement for the reading of the director's report and the consideration thereof. The paragraph as to the conclusiveness and findings has been re-drafted."

engineer's preliminary report as likely to be affected by the improvement. The engineer's recommendation, to which the board gave consideration in its order for the filing of a detailed plan and survey placing the open ditch along the road and on relator's land as opposed to placing it on the Maday land as had been reported at the first preliminary hearing, involves a matter that is subject to investigation at the final hearing. In fact, it only constitutes a determination of the type of drainage, whether open ditch or closed tile, and otherwise the area to be encompassed by the proposed improvement.

The order made at the close of the preliminary hearings is not conclusive as to the location of the ditch nor as to the side of the road on which the ditch might be placed, for at this point the ditch proceedings have neither been approved nor dismissed. See § 106.191, subd. 2, "Changes," and subd. 3, "Re-examination." Since there has been no final determination here prior to the final hearing provided for by statute, there is nothing for the court to review. Evidence on necessity and practicability may convince the board at the final hearing that the plan reported by the engineer and considered at the preliminary hearing may be improved by changes therein. All parties may then be heard thereon and the board will thereupon enter its final order.

In the final analysis, the locating or placing of the open ditch in the case at bar will remain subject to future consideration and possible change until such time as the report has been made on the final investigation and a determination arrived at, at the final hearing. All questions relative to practicability and necessity, which include locating or placing the ditch within the proposed area, must await final determination at the final hearing.

We therefore conclude that there has not, as yet, been a final determination or the entry of a final order by the county board on location or placement of the open ditch within the proposed ditch area, binding on the parties, or prohibiting a change in the course of the ditch, if any change should appear practical or necessary at the final hearing. The county board having at this point performed their legislative duties and functions within and

pursuant to the provisions of the statute, this court cannot substitute its judicial determination therefor.

We might add that relator states that, if this should be the holding of the court, then it is conceded that certiorari will not lie to review the present order.

Prior to the adoption of L. 1917, c. 441, all questions of propriety, necessity, and practicability were decided at the final hearing. Heinz v. Buckham, 104 Minn. 389, 116 N. W. 736. Following the change by adoption of L. 1917, c. 441, all questions involving the propriety, necessity, and public utility of the proposed ditch were decided and determined by the findings and order of the court at the first hearing. It constituted a final order as respects those questions, to be challenged, if deemed erroneous, only by certiorari sued out in review of that particular order. In re Judicial Ditch No. 6, 156 Minn. 95, 194 N. W. 402.

The procedure was again changed to practically its present form, as far as finality is concerned, by L. 1925, c. 415, § 7 (M. S. A. 1945, § 106.07, subd. 2); and in some respects again by L. 1947, c. 143, § 10, subds. 5 and 6 (§ 106.101, subds. 5 and 6), the latter supplying the basis for reaching our present conclusions herein. In State ex rel. Tolversen v. District Court, 134 Minn. 435, 436, 159 N. W. 965, construing the applicable statutory law prior to the adoption of L. 1917, c. 441, and determining the effect of the order appointing an engineer, this court said: "We are unable to see that the order appointing an engineer is a final adjudication of any question that relator seeks to raise. It does not preclude him from raising all such questions on *certiorari* directed to the final order establishing the ditch, if such order shall be made." The proceedings for the drainage project there involved were brought under G. S. 1913, c. 44.

While we have not been shown any decision directly in point since the new drainage code was enacted, we think that the Tolversen case is to some extent both controlling and decisive. In In re Judicial Ditch No. 6, 156 Minn. 95, 194 N. W. 402, the court said that the purpose of making the findings on the preliminary hearing

final was to settle jurisdictional questions before too much expense had been incurred. That case was decided in 1923 while L. 1917, c. 441, were controlling in ditch proceedings. In the more recent case of In re Petition for County Ditch No. 53, 238 Minn. 392, 57 N. W. (2d) 158, (1953) this court clearly indicated that one of the matters included in the question of practicability of a ditch is the sufficiency of the outlet.

The order of the county board made at the close of the preliminary hearing continued from January 14, 1955, to March 10, 1955, in the county ditch proceeding under M. S. A. c. 106, for improvement of an existing ditch, which order directed the engineer, pursuant to revised plan submitted at the adjourned preliminary hearing, to make detailed plan and survey of the proposed improvement placing the open ditch portion on relator's land, is not a final determination of any right of persons who might be affected by the plan, and certiorari will not lie to review such order.

Affirmed.