Gerald WICK, petitioner, Respondent,

v.

Rajeana WICK, n/k/a Rajeana L. Wick–Williams, Respondent,

and

Victoria L. Ridge, third party respondent, Appellant,

Hennepin County Child Support Enforcement, intervenor, Respondent.

No. A03–74.

Court of Appeals of Minnesota.

Oct. 22, 2003.

600

Joyce Cundy, Cundy & Paul, LLC, Bloomington, for respondent Gerald Wick.

Darrin M. Rosha, St. Paul, for respondent Rajeana L. Wick–Williams.

Suzanne Born, Minneapolis, for appellant.

Amy Klobuchar, Hennepin County Attorney, Thomas L. Aarestad, Assistant County Attorney, Minneapolis, for respondent Hennepin County Child Support Enforcement.

Considered and decided by WILLIS, Judge and TOUSSAINT, Chief Judge and SHUMAKER, Judge.

## OPINION

WILLIS, Judge.

Respondent-intervenor attempted to commence a civil action against appellant by serving on her a motion to join her as a party to a post-dissolution-decree proceeding. Appellant moved to dismiss, arguing that the district court lacked personal jurisdiction over her because she had not been served with a summons and complaint. The district court denied appellant's motion. Because we conclude that respondent-intervenor did not properly invoke the district court's jurisdiction over appellant, we reverse.

## FACTS

Gerald Wick and Rajeana Wick–Williams dissolved their marriage in 1985. The dissolution judgment directed Wick to pay monthly child support for the couple's four children. Wick stopped making child-support payments in 1989. There have been extensive proceedings since 1989 regarding Wick's failure to satisfy his child-support obligation, but we will summarize only the most pertinent here.

At the time of the dissolution, Wick, individually or through a corporation in which he had an interest, either owned or was in the process of buying parcels of real estate in St. Louis County on which the corporation operated a hay business. The dissolution judgment awarded both the real estate and the marital homestead to Wick.

In 1988, Wick conveyed all but 5% of his interest in the corporation to his brother, although Wick continued to run the hay business. There was a mortgage on most of the real estate that was awarded to Wick, and the mortgage was foreclosed on at some time before 1992, when appellant Victoria Ridge, Wick's girlfriend, purchased the real estate at a sheriff's sale.

At some time before July 1993, respondent Hennepin County Child Support Enforcement ("the county") intervened to recover from Wick the amount of public assistance that it had provided to Wick–Williams. In motions heard by the district court in July 1993, the county asked the court to (1) increase Wick's child-support obligation from $169 per month, (2) hold Wick in contempt of court for failure to pay child support, and (3) grant the

county a judgment in the amount of the public assistance that it had provided to Wick–Williams. The county appears to have argued that Wick fraudulently conveyed to Ridge the real estate that the dissolution judgment had awarded to him and that he arranged to receive only $400 in gross monthly wages from the corporation so that he could claim that he was unable to pay his monthly child-support obligation. In a February 1994 order, the district court found that the county had not shown either that the arrangement under which Wick received $400 in gross monthly wages was fraudulent or that Ridge's purchase of the real estate was fraudulent. The district court thus denied the county's motions to increase Wick's child-support obligation and for a judgment for the amount of public assistance, though the court concluded that Wick was in contempt of court for his failure to pay his then-existing support obligation.

In July 2001, the district court heard Wick–Williams's motion to find Wick again in contempt for failure to pay child-support arrears, which by then were more than $50,000. In an August 2001 order, the district court found that (1) Ridge had assumed ownership of the corporation operating as "Wick's Hay," (2) the marital homestead had been foreclosed on and purchased by Ridge, and (3) Ridge routinely paid all of Wick's "living expenses and personal needs." Also, the court found that Wick conveyed the corporation and homestead to Ridge in a "sham transaction" to avoid paying the child-support arrears and that Wick was "the beneficial owner of all property placed in the name of Victoria Ridge." Accordingly, the court placed a lien on Ridge's assets in the amount of the child-support arrears.

In December 2001, the county served Ridge by mail with a motion that request-ed an order joining Ridge "as a party to this action" and requiring Ridge "to take immediate steps to substantially accelerate the repayment of child support arrearages from the assets and income" of the corporation. Also, the motion requested an order vacating an October 1992 reduction of Wick's child-support obligation, increasing the child-support arrears (if the court vacated the earlier reduction), and granting judgment to Wick–Williams for the child-support arrears "not already reduced to judgment." The only legal issue discussed in the memorandum of law accompanying the motion was that Wick had committed "a fraud upon the Court" because (1) he claimed in a 1992 proceeding that he had insufficient income to satisfy his child-support obligation and thus persuaded the district court to reduce the obligation and (2) the district court in 2001 had found that he had transferred assets sufficient to satisfy the obligation to Ridge in a "sham transaction." A district court referee granted the county's motion and joined Ridge as a "third-party respondent" to the dissolution action and directed that Ridge be served with all motions and pleadings in the case. Wick–Williams then moved the district court for an order "to foreclose on all assets real or personal" owned by Ridge "for the purpose of satisfying support arrearages."

■ Ridge moved to dismiss, arguing that joinder was improper and that the court lacked personal jurisdiction over her because she had not been served with a summons and complaint. A district court referee rejected Ridge's arguments, concluding that "[s]ince this is a post-decree support matter, no Summons and Complaint was required to be filed." On de novo review, the district court affirmed the referee's conclusion, noting that Ridge had been served with the motions and pleadings and stating:

It makes no sense to say that in order for the Court to have personal jurisdiction over Ridge, a copy of the divorce summons and complaint needs to be served on Ridge. In Family Court post decree matters are initiated and heard by way of motion.

Ridge appealed the district court's conclusions on both joinder and personal jurisdiction. Because an order joining a party is not appealable, *Hillerns v. Minnesotan Hotel,* 271 Minn. 101, 103–04, 135 N.W.2d 63, 65 (1965), this court limited Ridge's appeal to the denial of her motion to dismiss for lack of personal jurisdiction.

## ISSUE

Did the district court err by denying appellant's motion to dismiss for lack of personal jurisdiction?

## ANALYSIS

 Whether personal jurisdiction exists is a question of law, which we review de novo. *Griffis v. Luban,* 646 N.W.2d 527, 531 (Minn.2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 1483, 155 L.Ed.2d 225 (2003). Personal jurisdiction has two elements: First, there must be an adequate connection between the defendant and the state, known as a "basis" for the exercise of personal jurisdiction by the district court. *See* 1 Douglas D. McFarland & William J. Keppel, *Minnesota Civil Practice* § 721 (3d ed.1999); 16 James Wm. Moore et al., *Moore's Federal Practice* § 108.01[2][a] (3d ed.2003) (discussing personal-jurisdiction requirements applicable to both federal and state courts). Second, the plaintiff must invoke the jurisdiction of the district court using a "process" that is consistent with the requirements of due process and that satisfies those portions of the Minnesota Rules of Civil Procedure that govern the commencement of civil actions and the personal service of process. *See* Moore, *supra,* § 108.01[2][c] (stating that "even if a proper jurisdictional basis exists, service of process that does not meet due process and statutory requirements will vitiate jurisdiction"); *see also Peterson v. Sheran,* 635 F.2d 1335, 1337 (8th Cir.1980) (reviewing case commenced in federal court in Minnesota and concluding that court had no jurisdiction over parties not properly served); *Sievert v. Selvig,* 175 Minn. 597, 598, 222 N.W. 281, 282 (1928) (stating that summons properly served confers jurisdiction on court). Ridge does not argue that the district court lacked a basis for the exercise of jurisdiction. Instead, she maintains that the county did not properly invoke personal jurisdiction over her. Thus, we must decide whether the method that the county used to commence a civil action against Ridge was consistent with due process and conformed to that portion of the Minnesota Rules of Civil Procedure governing the commencement of actions and the service of process. *See Doerr v. Warner,* 247 Minn. 98, 103, 76 N.W.2d 505, 511 (1956); Moore, *supra,* § 108.01[2][c].

 Due process requires that a defendant receive notice of a civil action and an opportunity to be heard. *McFarland & Keppel, supra,* § 701, at 293; Moore, *supra,* § 108.90. This requirement is satisfied if the plaintiff complies with an officially prescribed process for invoking the district court's jurisdiction that, when followed, is reasonably likely to provide the defendant with actual notice of the action. *See Wuchter v. Pizzutti,* 276 U.S. 13, 18–19, 48 S.Ct. 259, 260, 72 L.Ed. 446 (1928); Moore, *supra,* § 108.91. Because the officially prescribed processes in Minnesota for commencing a civil action and the requirements for personal service of process are set forth in the Minnesota Rules of Civil Procedure, the question of whether the county properly invoked the court's personal jurisdiction turns on whether the

county commenced its action against Ridge in accordance with the rules of civil procedure.

██ Here, the county attempted to invoke the district court's jurisdiction over Ridge by moving to join her to the proceeding, apparently believing that doing so would satisfy the civil-action requirement. *Cf.* Minn. R. Civ. P. 20.01 (stating that persons may be joined as defendants if there is asserted against them "any right to relief" arising from the same transaction or occurrence and if a question of law or fact common to all defendants will arise in the action). Civil actions, however, are commenced by service of a summons on the defendant. Minn. R. Civ. P. 3.01; *see Doerr*, 247 Minn. at 103, 76 N.W.2d at 511 (stating "[a]s a general rule a civil action is commenced, and the court thereby acquires jurisdiction, when personal service upon the defendant is actually made as prescribed by statute or rule."). Here, the county did not initially serve Ridge with a summons and complaint. While the district court required that Ridge be "personally served with all Motions and legal pleadings filed in this case" and that her attorney be served by mail "with the same," and while, on review of that order, the district court found that the motions and legal pleadings had been served on Ridge, for three reasons service of these documents on Ridge cannot commence a civil action against her.

First, the judgment dissolving Wick's marriage to Wick–Williams was entered in 1985. Therefore the summons and petition culminating in that judgment could not have addressed any of the subsequent events generating the county's current attempt to pursue Ridge and the assets in her name. Hence, service of that summons and petition on Ridge could not have given her notice of the current claims against her and service on Ridge of that original summons and petition could not have satisfied the due-process prong of the civil-action requirement. Second, there is nothing in the other documents served on Ridge that could have reasonably provided her with notice of the specific cause of action that the county intended to assert against her. The memorandum of law supporting the county's motion to join Ridge discusses only Wick and his alleged "fraud upon the Court." Ridge is mentioned in the memorandum only in a reference to the district court's finding that Wick was the "beneficial owner" of property that had been placed in her name; no legal authority for asserting a civil action against Ridge is cited. Absent notice to Ridge of the cause of action the county sought to assert against her, service of these documents did not satisfy the due-process prong of the civil-action requirement. Third, none of the documents served on Ridge satisfies the portions of Minn. R. Civ. P. 4.01 that require a summons to "state the time within which these rules require the defendant to serve an answer" and to "notify the defendant that if the defendant fails to do so judgment by default will be rendered against the defendant for the relief demanded in the complaint." Thus, the requirements for asserting personal jurisdiction over Ridge were not satisfied here.

██ The county argues that the child-support income-withholding provisions of Minn.Stat. ch. 518 provide a basis for personal jurisdiction here. The county asserts that Ridge is Wick's employer and therefore a "payor of funds," as defined in Minn.Stat. § 518.6111, subd. 1(b) (2002). Because Ridge is a payor of funds, the county continues, any income-withholding order issued by the district court is binding on Ridge. *See* Minn.Stat. § 518.615, subd. 1 (2002). If such orders are binding on Ridge, the county concludes, the district

court has personal jurisdiction over her to pursue its current claims against her. We disagree. The county has not established on appeal that even if Ridge is a payor of funds, she has violated an income-withholding order issued by the district court. Moreover, we must interpret these statutes according to their plain meaning, *see* Minn.Stat. §§ 645.08(1), 645.16 (2002), and there is nothing in the language of either Minn.Stat. § 518.615 or Minn.Stat. § 518.6111 that provides that either statute is a basis for the exercise of personal jurisdiction over a payor of funds for any reason beyond a contempt action under Minn.Stat. § 518.615, subd. 2 (2002). Because this appeal does not concern a contempt action brought against Ridge as a payor of funds, we conclude that neither Minn.Stat. § 518.615 nor Minn.Stat. § 518.6111 provides a basis for the exercise of personal jurisdiction over Ridge.

## DECISION

The district court erred by concluding that it could properly exercise personal jurisdiction over Ridge.

**Reversed.**